**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KOMORI AMERICA CORPORATION, | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. |
| STERLING UNITED, INC. f/k/a | ) | |
| UNITED GRAPHICS, INC. | ) | |
| a New York corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

KOMORI AMERICA CORPORATION, by and through its attorneys, Jerrold E. Fink and James Gillingham, and for its Verified Complaint, states as follows:

## THE PARTIES

1.     Plaintiff, KOMORI AMERICA CORPORATION (hereinafter "KAC"), was at all times referenced in this Verified Complaint, and now is, a corporation incorporated under the laws of the State of Illinois, having its principal place of business in Rolling Meadows, Illinois.

2.     Defendant STERLING UNITED, INC. f/k/a UNITED GRAPHICS, INC. (hereinafter "Sterling") is a corporation organized under the laws of the State of New York, having its principal place of business in Amherst, New York.

3.     Sterling is a citizen of the State of New York.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00 and is

1

between citizens of different states.

5.      Venue is proper pursuant to 28 U.S.C. § 1391.  Additionally, the Machinery Sales Agreement that is the subject of this suit contains a forum selection clause, which subject to certain exceptions not here relevant, designates this Judicial District as the exclusive jurisdiction and venue of any judicial action brought by the parties.

## COUNT I – BREACH OF CONTRACT

6.      KAC realleges and reincorporates, as if fully set forth herein, the allegations of Paragraphs 1 through 5, inclusive.

7.      On October 7, 2011, KAC and Sterling (then United Graphics, Inc.) entered into a Machinery Sales Agreement (hereinafter the "Agreement"), for the sale of a new Komori LS1040P Series 4045 press, including certain services and attachments (hereinafter collectively referred to as the "Press").  A copy of the Agreement is attached hereto and incorporated herein as Exhibit "A".

8.      Pursuant to the Agreement, Sterling agreed to pay $2,691,281.00 for the Press.

9.      KAC granted Sterling a net trade-in allowance of $178,326.39. (*See* Invoice, *attached hereto as* Exhibit "B".)

10.      Sterling paid $10,000.00 toward the purchase price of the Press.

11.      The Agreement obligated Sterling to pay the remaining balance, $2,502,954.61, upon delivery of the Press.

12.      Paragraph 15 of the Agreement's Additional Terms and Conditions (hereinafter the "Terms and Conditions") provides that Sterling shall be in default in the event that Sterling fails to make any payments when due.

2

13. Sterling failed to make payment at the time of delivery of the Press. As a result thereof, Sterling is in default under the Terms and Conditions.

14. Paragraph 15 of the Terms and Conditions further provides that, upon default by Sterling, all unpaid sums due pursuant to the Agreement shall become immediately due and payable.

15. The Agreement also provides that KAC is entitled to 2% interest per month or at the highest rate provided by law, whichever is less, for any past-due payments by Sterling.

16. Paragraph 15 of the Terms and Conditions further provides that, in the event of any claim, action or proceeding relating to a default under the Agreement and/or its Terms and Conditions, KAC is entitled to all costs and expenses and fees incurred enforcing any right reserved to KAC under the Agreement and/or the Terms and Conditions, including without limitation, reasonable attorneys' fees and paralegal fees.

17. On September 13, 2012, KAC made written demand for full payment of the delinquent balance. (*See* Proctor Letter, *attached hereto as* Exhibit "C".)

18. KAC has fully performed all of its obligations under the Agreement.

19. As a result of Sterling's default, there is now due and owing from Sterling to KAC $2,502,954.61, plus interest, attorneys' and paralegal fees and costs as provided in the Agreement, the Terms and Conditions and as permitted at law.

**WHEREFORE**, KOMORI AMERICA CORPORATION prays as follows:

A. That this Court enter judgment in favor of Plaintiff, KOMORI AMERICA CORPORATION, and against Defendant, STERLING UNITED, INC. f/k/a UNITED GRAPHICS, INC., in the amount of $2,502,954.61, plus interest, reasonable attorneys' fees, reasonable paralegal fees, and costs as allowed by the parties Agreement and/or by law; and

B.     Such other and further relief as this Court may deem just and equitable.

## COUNT II – REPLEVIN

20.     KAC realleges and reincorporates, as if fully set forth herein, the allegations of Paragraphs 1 through 19, inclusive.

21.     In order to secure payment obligations of Sterling under the Agreement, KAC was granted a purchase money security interest in the Press, as collateral, pursuant to the Terms and Conditions.

22.     KAC timely perfected its security interest by filing a UCC financing statement on November 17, 2011.  (*See* UCC Financing Statement, *attached hereto as* Exhibit "D".)

23.     Subsequent to the filing of the UCC financing statement, Sterling changed its name from United Graphics, Inc., to Sterling United, Inc.

24.     As a result of Sterling's name change, on January 30, 2012, KAC filed a UCC financing statement amendment, which reflected the change in the debtor's name.  (*See* UCC Financing Statement Amendment, *attached hereto as* Exhibit "E".)

25.     Paragraph 15 of the Terms and Conditions provides that, upon Sterling's default, and upon KAC's written notice of default to Sterling, KAC shall have all rights of a secured party, and shall also have the right to immediate possession of the Press, which Sterling agrees to peaceably tender to KAC.

26.     The Press wrongfully remains in Sterling's possession.

**WHEREFORE**, KOMORI AMERICA CORPORATION prays as follows:

A.     That this Court enter an order granting KOMORI AMERICA CORPORATION immediate possession of the Press; and

B.     Such other and further relief as this Court may deem just and equitable.

4

## COUNT III – INJUNCTIVE RELIEF

27.     KAC realleges and reincorporates, as if fully set forth herein, the allegations of Paragraphs 1 through 26, inclusive.

28.     The Press is in the possession of Sterling which, notwithstanding its aforementioned default and the demands of KAC, Sterling continues to operate and, therefore is subject to continuing depreciation and deterioration, thus rendering it less marketable and impairing the value of KAC's interest in the Press.

29.     The continued possession, retention, and use of the Press and its depreciation in value, without payment to KAC is thus causing irreparable and continuing injury to KAC for which KAC has no adequate remedy at law.

30.     Paragraph 15 of the Terms and Conditions provides that, upon Sterling's default, and upon KAC's written notice of default to Sterling, KAC shall have all rights of a secured party, and shall also have the right to immediate possession of the Press, which Sterling agrees to peaceably tender to KAC.

31.     Paragraph 15 of the Terms and Conditions also provides that upon Sterling's default, and upon KAC's written notice of default to Sterling, KAC shall have the right to immediately disconnect, disable or render unusable the Press and, after notice from KAC, Sterling shall immediately cease using the Press.

**WHEREFORE**, KOMORI AMERICA CORPORATION prays for temporary, preliminary and permanent injunctions against STERLING UNITED, INC. f/k/a UNITED GRAPHICS, INC. as follows:

A.      For preliminary and permanent injunctive relief immediately restraining and

enjoining STERLING UNITED, INC. f/k/a UNITED GRAPHICS, INC., its agents, attorneys, servants, employees, and others acting in their stead or in concert with them from further use of the Press, and/or an order requiring Sterling to peacefully turn over the Press to Komori; and

     B.     Such other relief as this Court may deem just and equitable.

**KOMORI AMERICA CORPORATION**

By:     /s/ Jerrold E. Fink

     One of Its Attorneys

Masuda, Funai, Eifert & Mitchell, Ltd.
Jerrold E. Fink, Esq.
James G. Gillingham Esq.
203 N. LaSalle St., Suite 2500
Chicago, Illinois  60601-2002
(312) 245-7500

R:\03093 Komori America Corporation\10159 - Sterling United\Verified Complaint Federal (10-18-2012).docx

## **VERIFICATION**

I, Robert J. Rath, declare as follows:

1.      I am the Executive Vice President of Komori America Corporation.

2.      I have personal knowledge of Komori America Corporation and its activities, including those set forth in the foregoing *Verified Complaint*, and if called upon to testify I would competently testify as to the matters stated herein.

3.      I verify under the penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning Komori America Corporation are true and correct.  Executed on December 21, 2012.

KOMORI AMERICA CORPORATION

By: _____

Name: _____

Title: _____

# KOMORI

**NEW MACHINERY SALES AGREEMENT**

**Seller**

KOMORI AMERICA CORPORATION
5520 Meadowbrook Industrial Court
Rolling Meadows, Illinois 60008
847-806-9000
IL Reg. No 1617-5042

**Purchaser Information**
Purchaser's Exact Legal Name:
United Graphics, Inc

Primary Business Address: 100 River Rock Drive _____ (Street)

Buffalo NY 14207 _____ (City, State, Zip)

Purchaser's Telephone #: (716) 871-1260  Contact: John Giblin

Purchaser's E-mail: john@unitedgraphics.net

Purchaser's Organization ID No. is: 18-1582052

**Purchaser is (Please check one and complete)**

1. A Corporation, incorporated under the laws of the State of **NY**

2. A Limited Liability Company organized in the State of _____

3. A Partnership organized under the laws of the State of _____

4. A Proprietorship owned by _____ whose principal residence is

5. Other, please describe _____

Purchaser represents to Seller that all of the above information (hereinafter "Purchaser Information") is complete and accurate as of the date of this Machinery Sales Agreement. Purchaser also represents to Seller that during the past one (1) year, Purchaser has not changed its state of organization, type of business entity, location of its principal business office, or location of the principal residence(s) of the owner(s) in the case of a proprietorship or partnership, except as follows (if no change state "None"):

"None"

Subject to the terms and conditions hereinafter stated, Komori America Corporation ("Seller") hereby agrees to sell and the party listed above as Purchaser ("Purchaser") hereby agrees to purchase the following described Machinery:

One new Komori LS1040P/C Series 4045, including all services and equipment as described in "ADDENDUM A" attached

To be equipped as provided above and to be delivered on or about _____ Oct 2011 _____ "Scheduled Shipment Date"

### I. PURCHASE PRICE

The Purchaser agrees to pay Seller for said Machinery as follows:

1. a.  F.O.B Purchaser's Dock Delivered with training and installation supervision       $2,691,281.00

   b.  _____

2. Tax ( _____ % of _____ )       $0.00
   Purchaser must supply tax exemption certificate to Seller prior to delivery, otherwise sales/use tax will be charged.

3. **Total Purchase Price**       **$ 2,691,281.00**

### II. PAYMENT SCHEDULE

| | | | NOTES |
|---|---|---|---|
| 1. | Cash at time of execution of this Agreement _____ | $10,000.00 | Execution of this agreement is contingent upon satifactory finance approval. |
| 2. | | | |
| 3. | Total Trade-in allowance _____ | $550,000.00 | |
| 4. | Less estimated trade-in payoff  _____ | ($504,000.00) | |
| 5. | Thirty (30) days after delivery or upon first Commercial Operation whichever is earlier. | _____ | |
| 6. | | | |
| 7. | Upon Delivery _____ | $2,635,281.00 | |
| 8. | Total Payment (total 1-7) (Same as Total Purchase Price, above) | $ 2,691,281.00 | |

Note: Actual trade-in payoff amount may vary from the amount listed above on line 4, which will require a final adjustment of the net funds due.

Interest will accrue on each payment, if not received on the due date, at 2% per month or at the highest rate permitted by law, whichever is less. Seller shall be under no obligation to accept the late payment, the right to collect such interest being in addition to all other remedies provided and not exclusive of the right to declare default for such delinquency.

THIS AGREEMENT INCLUDING ANY ADDENDUM, ATTACHMENT, EXHIBITS OR QUOTATIONS PERTAINING TO THE MACHINERY OR EQUIPMENT OR THIS AGREEMENT) IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS INCLUDED HEREWITH AS EXHIBIT NMSA-707 AND INITIALED BY PURCHASER INCLUDING THOSE LIMITING WARRANTIES AND REMEDIES. PURCHASER HEREBY ACKNOWLEDGES ITS RECEIPT OF A COPY OF THIS DOCUMENT AS EXECUTED BY PURCHASER.

The above Machinery will be installed and operated at Purchaser's premises at:

6D30 N. BAILEY AVE     AMHURST     New York     14226

| Street Address | City | County | State | Zip |

United Graphics, Inc
**Purchaser**

BY: _____
Its Duly Appointed Officer

TITLE: PRESIDENT

DATE: 10/7/11

**Komori America Corporation**

BY: _____
Its Duly Appointed Officer

TITLE: _____

DATE: _____

**EXHIBIT**

A

**KOMORI AMERICA CORPORATION MACHINERY SALES AGREEMENT**
**GENERAL TERMS AND CONDITIONS**





**Komori LS1040/C/P, Series 4045**    **Features & Accessories**

ADDENDUM "A"

# UNITED GRAPHICS, INC.
## Amherst, New York

## LS1040/C/P S-4045
## With a Two Lamp Komori HUV Curing System

One (1) Komori Lithrone LS1040/C/P, 28 X 40 offset press with all standard equipment and the following factory/domestic accessories and services:

Delivery Pile Height:  57 3/32"
Feeder Pile Height:  57 3/32"
Maximum Printing Speed:  12,000 sph
Minimum Printing Speed:  3,000 sph
Maximum Sheet Size:  28 11/32" x 40 9/16"
Maximum Printing Area:  Single Sided - 27 15/16" X 40 5/32"
Maximum Printing Area:  Double Sided – 27 9/16" X 40 5/21"
Minimum Sheet Size:  14 3/16" x 20 15/32"
Plate Size:  31 ½" x 40 9/16"
Sheet Thickness Range:  Up to 24 pt board

Purchaser is responsible for the following items: proper foundation; adequate access to press site; all piping, wiring, duct work, roof penetrations/curbs and electrical connections to press controller and accessories; and all state and local taxes, licenses and/or permits.  A 2 hp compressor (35 lbs psi) or house air will be required for the required coating pump air.  In lieu of taxes, Purchaser is requested to provide appropriate tax exemption documentation.

Any purchase or sale of products/services referenced herein shall be subject to the terms and conditions set forth in the Komori America Corporation Machinery Sales Agreement which will become effective only upon execution by both Komori America Corporation and the Purchaser.  Pictures included in proposal are for reference only and may not reflect actual items included on Machinery.

Komori America Corporation                Page 1 of 1                PURCHASER'S INITIALS 



| Komori LS1040/C/P, Series 4045 | Features & Accessories |
| --- | --- |

# UNITED GRAPHICS, INC.

**Komori Stream Feeder**
- Non-Stop Feeder
- Non-Stop Feeder Pile Capacity + 100MM
- Advanced Cylinder Register Remote Control
- Ionizing Blower for Anti-Static Air Blast and Anti-Static Bar

**Infeed System**
- Suction Tape Feeder
- Wheels on Swing Grippers for Cardboard
- Ultrasonic Double Sheet Detector
- Advanced Cylinder Cocking
- Anti-Sheet Deviation Device on Feeder Board
- Cardboard Specifications (Max 24 pt.)
- Feeder Brush/Roller Adjustment
- Pitless Skid Loader
- Press Stop by Over-Shoot
- Suction Side Guide with Transparent Sheet Detector

**Inking System**
- Double Ink Fountain Roller Cheeks
- Factory Provision for Water Cooled Vibrator Rollers (3 per Unit)
- Ink Ductor Timing Adjustment
- Motor Driven Ink Fountain Roller
- Quick Touch Oscillating Ink Form Rollers (A,B,C,D) for All Units
- Spring Loaded Inker Adjustment

**Dampening System**
- Dampening Form Roller Speed Reduction (Hickey Picking Delta Effect)
- KOMORIMATIC Reverse Nip Dampeners
- Oscillation Dampener Bridge Rider Roller
- Skewing Device on KOMORIMATIC Dampeners
- Water Level Sensor

Any purchase or sale of products/services referenced herein shall be subject to the terms and conditions set forth in the Komori America Corporation Machinery Sales Agreement which will become effective only upon execution by both Komori America Corporation and the Purchaser. Pictures included in proposal are for reference only and may not reflect actual items included on Machinery.

PURCHASER'S INITIALS 



**Komori LS1040/C/P, Series 4045**    **Features & Accessories**

# UNITED GRAPHICS, INC.

**Printing and Transfer Units**
    Air Blower over Impression Cylinder
    Air Guides
    Blower Cabinet
    Chrome Plated Blanket Cylinder
    Chrome Plated Impression Cylinder
    Chrome Plated Plate Cylinder
    One Touch Blanket Clamp for Aluminum Barred Blanket
    One Touch Gripper Pad Up/Down
    Plate Cylinder Cocking Remote Control
    Plate Register Remote Control

**Coater Unit**
    Type V Chamber Coater
    Worm Gear Type Coating Blanket Clamp

**Delivery Section**
    Anti-Static Bar
    Automatic Lubrication of Delivery Chain Guide
    Auxiliary Delivery Pile
    Delivery Area Sensor
    Delivery Vacuum Wheel
    Descending Pile Controller (Optical Sensor)
    Heatproof Delivery
    Motorized Remote Control Paper Release CAM
    PQC (Print Quality Control) - Backup System
    Preset Counter & Stacking Counter
    Sheet Decurler

Any purchase or sale of products/services referenced herein shall be subject to the terms and conditions set forth in the Komori America Corporation Machinery Sales Agreement which will become effective only upon execution by both Komori America Corporation and the Purchaser. Pictures included in proposal are for reference only and may not reflect actual items included on Machinery.

PURCHASER'S INITIALS 



**Komori LS1040/C/P, Series 4045**                    **Features & Accessories**

# UNITED GRAPHICS, INC.

**Advanced Automation**
Feeder Side Blower Preset
Fully Automatic Plate Changers
Inker Phasing Remote Control
Paper Thickness Preset
· Feeder Board Brush and Wheel Preset
Sucker Height Remote Control
PQC-S (Print Quality Control) – Floppy Disk
Feeder Pile Sideways Control
Komori Automatic Blanket Washer
Komori Automatic Impression Cylinder Cleaners
Komori Automatic Ink Roller Washer System for HUV Ink and Conventional Ink
Oscillating Timing Remote Control
Paper Size Presets (Includes Sucker Box Automatic Positioning, Slow Down Vacuum Wheel Automatic
Positioning, Delivery Side Jogger Preset, and Side Guide Preset)

**Perfecting Unit**
Komori Perfector with Three Double Diameter Cylinders
Stainless Steel Jackets for HUV Printing
Twelve Inch Raise Kit with Bandstand (Excluding Beams or Concrete Piers)

**Advanced ink Management Software Integration**
Blade Setter
PDC-SII Closed Loop Color System (Printing Density Control Spectrophotometer)
2010 Advanced Integration (AI) mechanical and software interface upgrades

**Controls**
Pit Inch Station
Product Switch at Delivery
Ready, Inch, Reverse, and Stop Buttons (Left & Right)
Emergency Trip Button on Feeder Control Panel
Fully Guarded Dampener On/Off Buttons at Delivery Panel
Fully Guarded Ink Ductor On/Off Buttons at PQC
Tune-Up Button on Each Unit

Any purchase or sale of products/services referenced herein shall be subject to the terms and conditions set forth in the Komori America Corporation Machinery Sales Agreement which will become effective only upon execution by both Komori America Corporation and the Purchaser. Pictures included in proposal are for reference only and may not reflect actual items included on Machinery.

PURCHASER'S INITIALS 



**Komori LS1040/C/P, Series 4045**        **Features &**

# UNITED GRAPHICS, INC.

**Parts/Tools/Other**
- Bearing Puller
- Intercom Between Feeder and Delivery
- Lifting Frame & Lugs
- Operation, Parts and Electrical Manuals
- Pump Cabinet
- Resin Ink Knife
- Roller Arrangement Diagram
- Step Skirts

**Accessories**
- KomoriWeko Sprayer
- Transformer for the Air System on a Perfecting Press with a Coater
- Transformer for the Perfecting Press with a Coater
- Air Dryer & Compressor for the Press Only
- Komori/GTI PQC Light Stand
- Komori/Baldwin IR/Hot Air/Evacuation Aqueous Coating Drying System
- Komori/Baldwin Ultra Combination WCV, HUV and Dampener Circulator Temperature Control System
- Komori/Burgess Plate Bender and Plate Punch
- Komori Ink Slabs
- Komori/Harris & Bruno Aqueous Coating Circulation Systems
- Komori/Harris & Bruno LC1-A Upgrade for HUV Coating
- Komori/Harris & Bruno Inline Coating Heater for HUV Coating
- Komori/Harris & Bruno Aluminum Anolox Coating Roller Upgrade with One Spare Roller
- Komori/Harris & Bruno Spare Coating Chamber with Quick Disconnects
- Komori/Harris & Bruno Set-Up Cart
- Standard Two Lamp Komori HUV Curing System
- Komori HUV Retrofit Package for HUV Printing and Washup
- Inking and Dampening Rollers for HUV and Conventional Printing
- Self Standing Wall Loader
- Three Complete Sets of Spare Rubber Inking Roller Cores Uncovered
- 10 Sets of Spare Rubber Dampening Roller Cores Uncovered
- Thirty Six Month 2 X 18 KomoriKare Parts and Labor Warranty

Any purchase or sale of products/services referenced herein shall be subject to the terms and conditions set forth in the Komori America Corporation Machinery Sales Agreement which will become effective only upon execution by both Komori America Corporation and the Purchaser. Pictures included in proposal are for reference only and may not reflect actual items included on Machinery.



# KOMORI

### KOMORI AMERICA CORPORATION
### USED MACHINERY TRADE-IN RIDER

This Rider is part of the attached Machinery Sales Agreement ("MSA")  dated _____  12 29 10  , between

**United Graphics, Inc**

("Purchaser") and Komori America Corporation ("Seller") covering the following equipment purchase ("Machinery"):

Nothing in this Rider alters the Terms & Conditions set forth in the MSA.  As part of the MSA,
Purchaser hereby agrees to pass title and possession to Seller for the following used equipment ("Trade-In")
described on page 2 herein.

The Trade-In described herein shall become the property of Seller the earlier of:  a) Removal of Trade-In by
Seller or its assignee or b) First Commercial Run of Machinery.  First Commercial Run of Machinery will
automatically terminate use of Trade-In by Purchaser.  The Trade-In will be removed no later than 30 days after
First Commercial Run of Machinery unless otherwise agreed to as follows:  _____

**In the event the Trade-In will be removed at an agreed upon later date and the Purchaser will continue to use
such Trade-In until that time, Purchaser shall assume and thereafter bear the entire risk of loss due to any
and every cause whatsoever, including, but not limited to, theft, destruction of, or damage to, the Trade-In or
bodily injury, death or property damage arising out of the use, maintenance and/or operation of the Trade-In.
If possession is delayed by Purchaser, the amount specified on the MSA as the "Trade-In value" will be
immediately invoiced to Purchaser by Seller.  Purchaser agrees that Seller or its assignee shall have
unrestricted access to the Trade-In at time of removal from Purchasers premises.  Purchaser agrees to
demonstrate equipment to potential buyers as requested by Seller.  Purchaser agrees that Seller shall
perform, at their discretion, two unrestricted press inspections of the Trade-In.  The first inspection will
transpire upon Purchaser's signature of the Trade-In Machinery Rider or within a reasonable amount of time
thereafter.  The second inspection will transpire within a reasonable amount of time prior to removal of the
Trade-In.**

**Press is owned "free & clear" (Please indicate)**
    No    If NO, please provide information on all lien holders below.

**PRIMARY LIEN HOLDER:**
Company Name: *FIRST NIAGARA BANK*      Phone #: 716-819-5810
Contact Name: *ED PRZLUCKI*      Fax #: 716-819-5150
Estimated Payoff: *$352,000*      As of (MM/DD/YYYY): 3/15/11

**SECONDARY OR BLANKET LIEN HOLDER:**
Company Name: _____      Phone #: _____
Contact Name: _____      Fax #: _____
Estimated Payoff: _____      As of (MM/DD/YYYY): _____

**BLANKET LIEN HOLDER:**
Company Name: _____      Phone #: _____
Contact Name: _____      Fax #: _____
Estimated Payoff: _____      As of (MM/DD/YYYY): _____

Customer Initial _____

# KOMORI

## Trade-In

### Request for Trade-In Value

| | | | | | |
|---|---|---|---|---|---|
| Date: | 12 29 10 | Customer: | United Graphics,Inc | Age (year built): | 2006 |
| Salesman: | Brian McMahon | City: | Buffalo | # Units | 4 |
| E-Mail: | Brian_mcmahon@ne.komori.co.jp | State: | NY | Date Available: | 4/1/11 |
| Cell Phone: | 508 254 0988 | Contact: | JohN Giblin | | |
| Fax: | | Phone: | 716 712 2600 | | |
| | | | Total Trade Allowance | $268,000 | |

### Equipment Description

| | | | | |
|---|---|---|---|---|
| Install Date & Age | November 1, 2006 | Plate Changers | | Semi - Excellent |
| Manufacturer | Komori | Ink Roller Washers | | Yes - Good |
| Model/Series | Spica 4/C | Blanket Washers | | Yes - Good |
| Serial Number | 2190 | | Brand: | Factory |
| Impression Count/As of date | 18 Million | Imp. Cylinder Cleaners | | |
| Location of Perfector | 2 & 3 | | Brand: | |
| Console Type/Condition | PQC I | AMR (Preset Feeder/Deliv) | | |
| Coater Type | | Ink Agitator/Filler | | |
| Non-stop Feeder | Not included with press | | Type/Brand: | |
| Non-stop Delivery | Yes - Excellent | Powder Sprayer | | |
| Dampener Type/Condition | Excellent | | Brand: | Factory |
| Dryer | Not included with press | Circulator | | Central |
| | Brand: | | Brand: | Royse |
| UV Curing Type/# of Interdecks | | Ink & /Water Cores | | |
| KMS/PDCS | | | How many sets? | |
| Water Chilled Vibrators | | Transformer | | |
| | Brand: | | Voltage: | |
| Cylinder Damage/Unit # | | Bender | | |
| | Cylinder Type | Manuals | | |
| Condenser Location | | Raise Kit | | |
| Punch | | Plate cocking | | |
| Most common stock run | | List any damage to press or non operating items | | |
| Chrome Cyinders | Plate | | | |
| | Cylinder Type | Blanket | | |
| | | Impression | | |

PURCHASER represents it now has and upon removal by Seller or its assignee, will have good title to this Trade-In, free and clear of all liens and encumbrances and that the Trade-In, upon removal, will be in the same condition as described above and will include all items required for normal operation. If, upon removal, any items are missing or the Trade-In does not conform to the representations listed above as to condition, all costs of replacement/repair to restore to the condition described above shall be for the account of Purchaser. Purchaser will continue to make payments on the Trade-In to the Lender/Lessor if applicable, until the earlier of a) Removal of Trade-In by Seller or its assignee or b) First Commercial Run of Machinery and termination of use of Trade-In by Purchaser. Seller will not accept Trade-In possession or title, until all liens are released or terminated.

Purchaser

KOMORI AMERICA CORPORATION

| | |
|---|---|
| Signature JOHN P GIBLIN | Signature |
| Name PRESIDENT | Name EVP |
| Title 12/29/10 | Title 2.24.2011 |
| Date | Date |

# KOMORI

## KOMORI AMERICA CORPORATION
## USED MACHINERY TRADE-IN RIDER

This Rider is part of the attached Machinery Sales Agreement ("MSA")  dated _____  12 29 10  , between

**United Graphics,Inc**
("Purchaser") and Komori America Corporation ("Seller") covering the following equipment purchase ("Machinery"):

Nothing in this Rider alters the Terms & Conditions set forth in the MSA.  As part of the MSA,
Purchaser hereby agrees to pass title and possession to Seller for the following used equipment ("Trade-In")
described on page 2 herein.

The Trade-In described herein shall become the property of Seller the earlier of:  a) Removal of Trade-In by
Seller or its assignee or b) First Commercial Run of Machinery.  First Commercial Run of Machinery will
automatically terminate use of Trade-In by Purchaser.  The Trade-In will be removed no later than 30 days after
First Commercial Run of Machinery unless otherwise agreed to as follows: _____

**In the event the Trade-In will be removed at an agreed upon later date and the Purchaser will continue to use
such Trade-In until that time, Purchaser shall assume and thereafter bear the entire risk of loss due to any
and every cause whatsoever, including, but not limited to, theft, destruction of, or damage to, the Trade-In or
bodily injury, death or property damage arising out of the use, maintenance and/or operation of the Trade-In.
If possession is delayed by Purchaser, the amount specified on the MSA as the "Trade-In value" will be
immediately invoiced to Purchaser by Seller.  Purchaser agrees that Seller or its assignee shall have
unrestricted access to the Trade-In at time of removal from Purchasers premises.  Purchaser agrees to
demonstrate equipment to potential buyers as requested by Seller.  Purchaser agrees that Seller shall
perform, at their discretion, two unrestricted press inspections of the Trade-In.  The first inspection will
transpire upon Purchaser's signature of the Trade-In Machinery Rider or within a reasonable amount of time
thereafter.  The second inspection will transpire within a reasonable amount of time prior to removal of the
Trade-In.**

**Press is owned "free & clear" (Please Indicate)**
　　　**No**　　If NO, please provide information on all lien holders below.

**PRIMARY LIEN HOLDER:**
Company Name: FIRST NIAGARA BANC          Phone #: 716-819-5810
Contact Name: ED PRZLUCKI                 Fax #: 716-819-5150
Estimated Payoff: $268000                 As of (MM/DD/YYYY): 3/15/11

**SECONDARY OR BLANKET LIEN HOLDER:**
Company Name:                             Phone #: _____
Contact Name:                            Fax #: _____
Estimated Payoff:         As of (MM/DD/YYYY): _____

**BLANKET LIEN HOLDER:**
Company Name:                             Phone #: _____
Contact Name:                            Fax #: _____
Estimated Payoff:         As of (MM/DD/YYYY): _____

Customer Init▉▉▉▉▉

# KOMORI

## Trade-In
### Request for Trade-In Value

| | | | | |
|---|---|---|---|---|
| **Date:** | 12 29 10 | **Customer:** | United Graphics, Inc | **Age (year built):** 2003 |
| **Salesman:** | Brian McMahon | **City:** | Buffalo | **# Units** 6 coater |
| **E-Mail:** | Brian_mcmahon@ne.komori.co.jp | **State:** | NY | **Date Available:** 4/1/11 |
| **Cell Phone:** | | **Contact:** | John Giblin | |
| **Fax:** | | **Phone:** | 716 712 2600 | |
| | | | **Total Trade Allowance** | $352,000 |

### Equipment Description

| | | | |
|---|---|---|---|
| Install Date & Age | September 1, 2005 | Plate Changers | Semi - Excellent |
| Manufacturer | KOMORI | Ink Roller Washers | Yes - Excellent |
| Model/Series | NL628C/P-45 | Blanket Washers | |
| Serial Number | 2001 | *Brand:* | Factory |
| Impression Count/As of date | 88 million | Imp. Cylinder Cleaners | Yes - Good |
| Location of Perfector | | *Brand:* | Factory |
| Console Type/Condition | PQC-IV | AMR (Preset Feeder/Deliv) | Yes - Excellent |
| Coater Type | H&B | Ink Agitator/Filler | |
| Non-stop Feeder | Yes - Good | *Type/Brand:* | |
| Non-stop Delivery | Yes - Good | Powder Sprayer | |
| Dampener Type/Condition | Excellent | *Brand:* | Factory |
| Dryer | Yes - Excellent | Circulator | |
| *Brand:* | Baldwin | *Brand:* | Royse |
| UV Curing Type/# of Interdecks | | Ink & /Water Cores | |
| KMS/PDCS | KMS III   PDCS | *How many sets?* | |
| Water Chilled Vibrators | Yes - Excellent | Transformer | |
| *Brand:* | Tresue | *Voltage:* | |
| Cylinder Damage/Unit # | No | Bender | Yes - Excellent |
| *Cylinder Type* | | Manuals | All |
| Condenser Location | Roof | Raise Kit | |
| Punch | Yes - Good | Plate cocking | Yes |
| Most common stock run | Commercial Mix | | |
| Chrome Cylinders | Plate | List any damage to press or non operating items | |
| *Cylinder Type* | Blanket | | |
| | Impression | | |

PURCHASER represents it now has and upon removal by Seller or its assignee, will have good title to this Trade-In, free and clear of all liens and encumbrances and that the Trade-In, upon removal, will be in the same condition as described above and will include all items required for normal operation. If, upon removal, any items are missing or the Trade-In does not conform to the representations listed above as to condition, all costs of replacement/repair to restore to the condition described above shall be for the account of Purchaser. Purchaser will continue to make payments on the Trade-In to the Lender/Lessor if applicable, until the earlier of a) Removal of Trade-In by Seller or its assignee or b) First Commercial Run of Machinery and termination of use of Trade-In by Purchaser. Seller will not accept Trade-In possession or title, until all liens are released or terminated.

| | |
|---|---|
| Purchaser | KOMORI AMERICA CORPORATION |
| Signature | Signature |
| Name JOHN GIBLIN | Name EJP |
| Title PRESIDENT | Title |
| Date 12/29/10 | Date 2.24.2011 |

## AMENDMENT TO MACHINERY SALES AGREEMENT

The Machinery Sales Agreement by and between Komori America Corporation ("Seller") and United Graphics, Inc. ("Purchaser") dated October 7, 2011 for the purchase and sale of a new Komori LS1040P/C Series 4045, is hereby amended as follows:

1. Delete Komori/Baldwin Ultra Combination WCV, HUV and Dampener Circulator Temperature Control System.

2. Add Komori/Baldwin Combination WCV, Dampener Circulator Temperature Control System.

UNITED GRAPHICS, INC.                    KOMORI AMERICA CORPORATION

By:_____            By:_____

Title:_____           Title:_____

Date: 10/28/11_____            Date:_____

The above amendment shall be subject to the additional terms and conditions appearing on the reverse side of the above-referenced Machinery Sales Agreement, including those limiting warranties and remedies.



New York State Department of Taxation and Finance
**New York State and Local Sales and Use Tax**

# Exempt Use Certificate

**ST-121**
(11/02)

To be completed by
the purchaser and
given to the seller

| | |
|---|---|
| Name of seller<br>KOMORI AMERICA CORPORATION | Name of purchaser<br>UNITED GRAPHICS, INC. |
| Street address<br>5520 MEADOWBROOK IND. CT. | Street address<br>100 RIVER ROCK DRIVE |
| City                State        ZIP code<br>ROLLING MEADOWS, IL 60008 | City                State        ZIP code<br>BUFFALO, NY 14207 |
| | Purchaser's Certificate of Authority number<br>16 - 158 2052 |

Check one:

☒ Single purchase certificate    ☐ Blanket certificate

**You cannot use this form to purchase motor fuel or diesel motor fuel exempt from tax.**

The purchase I am making is exempt from state and local sales and use taxes because the property or service(s) will be used for the exempt purpose indicated below and as explained in the instructions.

*(Please read the instructions for more information on each exemption, and check the applicable box(es) next to the exemption(s) you are claiming.)*

## Part I — Exemptions related to production

**Purchases described in (A) through (G) are exempt from all state and local sales and use taxes.**

☐ (A) Machinery and equipment, parts, tools, and supplies used or consumed in the production of tangible personal property for sale or in the production of gas, electricity, refrigeration, or steam, for sale.

☐ (B) Tangible personal property used or consumed in the production of a film for sale (valid for purchases made on or after December 1, 2002).

☐ (C) Tangible personal property used or consumed in providing telecommunications or Internet access services for sale.

☐ (D) Machinery, equipment, and apparatus (including parts, tools, and supplies) (1) used or consumed to upgrade cable television systems to provide digital cable television service for sale, or (2) purchased by a cable television service company to provide Internet access services for sale. (This exemption expires September 1, 2003.)

☐ (E) Machinery, equipment, or other tangible personal property (including parts, tools, and supplies) used or consumed by television or radio broadcasters in the production or transmission of live or recorded programs which are used by the broadcaster for specified purposes.

☐ (F) Purchases of gas or electricity or gas or electric service used to provide gas or electric service consisting of operating a gas pipeline, an electric transmission line, or a gas or electric distribution line.

☐ (G) Purchases of the following used or consumed in the production of tangible personal property (or a film, regardless as to the means by which the film is conveyed) for sale (check one or more boxes):

☐ fuel        ☐ gas        ☐ electricity

☐ refrigeration        ☐ steam

☐ gas, electric, refrigeration, or steam service

**Purchases described in (H) are exempt from all state and local sales and use taxes when delivered or used outside New York City, but subject to New York City local sales and use tax when delivered or used in New York City.**

☐ (H) Purchases of the following used or consumed in the production of gas, electricity, refrigeration, or steam for sale (check one or more boxes):

☐ fuel        ☐ gas        ☐ electricity

☐ refrigeration        ☐ steam

☐ gas, electric, refrigeration, or steam service

**Note: This certificate is not valid unless the purchaser completes the certification on page 2.**

**Page 2 of 4**   ST-121 (11/02)

## Part II — Services exempt from tax (exempt from all state and local sales and use taxes)

☐ (I) Installing, repairing, maintaining, or servicing qualifying property listed in Part I, (A) through (E). Please indicate the type of qualifying property being serviced by checking the applicable box(es):

(A) ☐        (B) ☐        (C) ☐        (D) ☐        (E) ☐

☐ (J) Producing, fabricating, processing, printing, and imprinting, including editing, dubbing, and mixing, qualifying property listed in Part I, (B) and (E). Please indicate the type of qualifying property being serviced by checking the applicable box(es):        (B) ☐        (E) ☐

## Part III — Other exemptions (exempt from all state and local sales and use taxes)

☐ (K) Tangible personal property used in research and development.

☐ (L) Purchases of the following used in research and development (check one or more boxes):

   ☐ gas            ☐ electricity

   ☐ refrigeration  ☐ steam

   ☐ gas, electric, refrigeration, or steam service

☐ (M) Cartons, containers, and other wrapping and packaging materials and supplies that are actually transferred to the purchaser.

☐ (N) Certified enhanced emissions inspection equipment for testing and inspecting motor vehicles. **Enter** your inspection station license number:

☐ (O) Alternative fuel vehicle refueling property, and the service of installing this property.

☐ (P) Commercial vessels (including certain property and services).

☐ (Q) Commercial aircraft (including certain machinery and equipment) and flight simulators purchased by commercial airlines.

☐ (R) Commercial fishing vessels (including certain property).

☐ (S) Pollution control equipment.

☐ (T) Other — describe exempt use and identify the section of the Tax Law covering this exemption.

_____
_____
_____
_____
_____
_____

**Certification.** I certify that the above statements are true and correct. I make these statements with the knowledge that knowingly making a false or fraudulent statement on this document is a misdemeanor under section 1817 of the Tax Law and section 210.45 of the Penal Law, punishable by imprisonment for up to a year and a fine of up to $10,000 for an individual or $20,000 for a corporation. I understand that the Tax Department is authorized to investigate the validity of the exemption claimed or the accuracy of any information entered on this form.

| Signature of purchaser or purchaser's representative *(give title and relationship)* | Date 12/28/10 |
|---|---|
| Type or print the name that appears in the signature box   JOHN O'BRIN | |



**KOMORI AMERICA CORPORATION**
5520 MEADOWBROOK INDUSTRIAL COURT
ROLLING MEADOWS, IL 60008 USA
PHONE: (847) 806-9000 – FAX (847) 806-9038

**Bill To:**
STERLING UNITED, INC.
6030 N. BAILEY AVENUE
AMHERST, NY 14226

Please include the invoice number on all remittances.

Invoice
2000807

Billing Date          Shipping Date
17-Feb-2012

Territory
EAST (KD2)

**Ship To:**
STERLING UNITED, INC.
2100 OLD UNION ROAD
CHEEKTOWAGA, NY 14227

Purchase Order Number
PP05921/36235 LS1040P SN130

Sales Order

**Remit To:**
DEPT. LA 23266
PASADENA, CA 91185-3266

Shipping Reference          Ship Via

Customer Number          Customer Location
3301                     AMHERST-MACHINE

| Terms | Salesperson | Customer Contact | Contact Phone | Contact Fax |
|-------|-------------|------------------|---------------|-------------|
| SEE BELOW | McMahon, Brian | JOHN GIBLIN | | |

| Item Num | Description | Tax | Quantity Shipped | Unit Price | Extended Amount |
|----------|-------------|-----|------------------|------------|-----------------|
| 1 | NEW KOMORI LS1040P SERIES 4045 SN 130 | No | 1 | 2,691,281.00 | 2,691,281.00 |
| 2 | TRADE IN ALLOW - TI-1997/KE SPICA429P SN 2190 | No | -1 | 175,000.00 | (175,000.00) |
| 3 | TRADE IN ALLOW - TI-1998/KE NL628P SN 2001 | No | -1 | 375,000.00 | (375,000.00) |
| 4 | PAYOFF AMT | No | 1 | 371,673.61 | 371,673.61 |

**Notes:**
MADE IN JAPAN
**Payment Details:**
$2,502,954.61 DUE ON DELIVERY

| | |
|---|---|
| SubTotal | 2,512,954.61 |
| Tax | 0.00 |
| Shipping | 0.00 |
| Total | 2,512,954.61 |
| Payments and Credits | 10,000.00 |
| Outstanding balance as of 24-Jul-2012 in USD | 2,502,954.61 |

EXHIBIT

tabbies

B

**MasudaFunai**

CHICAGO    LOS ANGELES    SCHAUMBURG

September 13, 2012

*Via Electronic Mail, Certified Mail, and Regular Mail*

John Giblin
Sterling United, Inc.
6030 N. Bailey Avenue
Amherst, NY 14266

Re:    **Outstanding Account of Sterling United, Inc.**

Dear Mr. Giblin:

Please be advised that this firm represents Komori America Corporation (hereinafter "Komori"). As you are undoubtedly aware, Sterling United, Inc. (hereinafter "Sterling") purchased a new Komori LS1040P Series 4045 press from Komori, which has not been paid for by Sterling. To date, Sterling has failed to make payment in the amount of $2,502,954.61 pursuant to Komori's invoice. This debt is now almost seven (7) months old and seriously delinquent.

Therefore, on behalf of Komori, we hereby demand that Sterling make immediate payment of $2,502,954.61 to Komori. Payment should be sent to the undersigned but made payable to "Komori America Corporation."

If Sterling fails to make such payment within ten (10) business days, please be advised that Komori will be forced to take any and all legal action necessary to protect its interests, including but not limited to, filing an action against Sterling for repossession of the press, and for all attorneys' fees, interest, costs and other remedies to which it may be entitled. In addition, once a judgment is obtained, Komori will pursue all enforcement proceedings at its disposal including filing liens against and foreclosing against assets of Sterling until the judgment is satisfied. We would like to avoid taking the aforementioned actions, but your immediate response is required.

We look forward to your immediate payment.

Very truly yours,

**Masuda, Funai, Eifert & Mitchell, Ltd.**

*Stephen Proctor*

Stephen Proctor

cc:    Komori America Corporation (*via e-mail*).

R:\SYS34\Komori Demand.docx



**EXHIBIT**

C